**ADVANCE MACHINE COMPANY and Robert J. Pond, Plaintiffs,**

**v.**

**CONSUMER PRODUCT SAFETY COMMISSION, Defendant.**

**No. 3–80 Civ. 372.**

United States District Court,
D. Minnesota,
Third Division.

Jan. 22, 1981.

On Motions For Summary Judgment
March 6, 1981.

Dorsey, Windhorst, Hannaford, Whitney & Halladay by Edward J. Schwartzbauer, Minneapolis, Minn., for plaintiffs.

U. S. Dept. of Justice by Rosalind Avnet Lazarus, Washington, D. C., and Consumer Product Safety Commission by Susan Birenbaum, Washington, D. C., for defendant.

## MEMORANDUM ORDER

ALSOP, District Judge.

This matter comes before the court upon the motion of defendant Consumer Product Safety Commission ["Commission"] to dismiss pursuant to Rule 12(b) of the Fed.R. Civ.P. Memoranda were submitted on behalf of all parties, and oral argument was heard on December 19, 1980.

## BACKGROUND

In July, 1977, the Commission commenced an action in United States District Court for the District of Columbia against plaintiffs Advance Machine Company and Robert J. Pond and several others, alleging that the automatic baseball pitching machines they manufactured and distributed were "imminently hazardous consumer products." Civil Action No. 77–1323. A consent judgment providing for corrective action was entered in May of 1978.

Subsequently, the Commission's Directorate for Compliance and Enforcement investigated whether the defendants in the District of Columbia action had complied with the reporting requirements of 15 U.S.C. § 2064(b). By letter of May 24, 1979, plaintiffs were notified of this investigation.

On April 23, 1980, the Commission voted to authorize the issuance of an administrative complaint against plaintiffs alleging a violation of the requirements of 15 U.S.C. § 2064(b). Plaintiffs were notified on May 15, 1980 that the Commission would issue a complaint in 30 days unless before then a settlement was reached.

On June 19, 1980, plaintiffs commenced the above-entitled action, alleging that they "are aggrieved by the acts of the defendant . . . Commission in excess of its jurisdictional powers." In their complaint, plaintiffs requested[1] preliminary and permanent injunctions preventing defendant from (1) proceeding with an administrative hearing for the purpose of assessing civil penalties against plaintiffs and with any discovery, motions or other matters preliminary to such hearing; and (2) "taking any steps to determine . . . if plaintiffs . . . have violated the Consumer Product Safety Act or to assess any penalty therefor against plaintiffs." In their complaint, plaintiffs also asked for "a declaration that: defendant has no power or jurisdiction to assess a civil penalty against plaintiffs, . . . nor to determine . . . by administrative procedure whether or not plaintiffs . . . have violated the Consumer Product Safety Act nor to conduct any proceedings pursuant to the regulations adopted by the Commission, 45 Fed.Reg. 29206 (May 1, 1980); that neither [plaintiff] is a 'manufacturer' of the products that are the subject of the Commission's allegations . . . within the meaning of the Consumer Product Safety Act; and further that defendant is exceeding its jurisdictional limits by proceeding to administra-

---

1. Plaintiffs also requested that the Commission be enjoined from issuing an administrative complaint. Because that complaint was served upon plaintiffs on August 5, 1980, this issue is moot.

tively adjudicate the existence or nonexistence of such alleged violation and to assess a civil penalty for any such alleged violation."

On August 4, 1980, the Commission filed the motion which presently is before the court. The Commission requests that the Court dismiss the above-entitled action "because plaintiffs have failed to exhaust their administrative remedies" and "because no issue raised by the Complaint is ripe for review by the Court at this time."

On December 16, 1980, the Administrative Law Judge presiding over the administrative proceedings initiated by the Commission declined to rule on the issue of the Commission's jurisdiction to proceed and refused to authorize an interlocutory appeal of that decision.

## RIPENESS

■ In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), the Supreme Court indicated that the "basic rationale" of the "ripeness" doctrine is:

> to prevent the courts through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

The *Abbott* Court directed courts considering the "ripeness" issue to examine "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.*

Plaintiffs' complaint puts into controversy an issue that is "ripe" for judicial decision: the Commission's statutory power to proceed administratively for the purpose of assessing a civil penalty against plaintiffs. This issue is a purely legal one, and therefore fit for judicial decision. *Id.* In addition, plaintiffs may unnecessarily suffer the expense and inconvenience of participation in the Commission's proceedings if court consideration is withheld. Moreover, the

administrative decision has been formalized, its effects are being felt by plaintiffs, and judicial resolution of this issue will not entangle the court in an abstract disagreement over administrative policies. *Id.* Finally, this issue must be "ripe" for decision now, for if it is not decided soon, the administrative hearings will have been held and the issue will be moot. Abstention on ripeness grounds clearly is not proper here. *See generally* Davis, *Administrative Law Treatise* § 21.01 (1958).

However, plaintiffs' requests that the court declare that the Commission lacks power to assess a civil penalty against plaintiffs and issue an injunction to prevent the Commission from assessing such a penalty are not "ripe" for adjudication. Although a resolution of the issue of the Commission's power to assess an administrative penalty may be necessary in resolving the statutory power of the Commission to proceed, as an independent issue it is not "ripe" for adjudication at this time. Plaintiffs will not suffer hardship if the court withholds consideration of this issue, since the Commission will decide whether it has the power to assess a civil penalty against plaintiffs before it does so, and since an adverse decision will be appealable to a federal court as a final order under the Administrative Procedure Act. Moreover, the administrative decision to assess a civil penalty against plaintiffs has not been formalized, nor have its effects been felt in a concrete way by plaintiffs. *See Abbott Laboratories v. Gardner, supra*, at 148, 87 S.Ct., at 1515.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ In *West v. Bergland*, 611 F.2d 710 (8th Cir. 1979), *cert. denied*, —— U.S. ——, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980), the United States Court of Appeals for the Eighth Circuit declared that exhaustion of administrative remedies should not be required unless the governmental interests served by exhaustion outweigh the interests served by immediate judicial resolution of the matter.

As regards the Commission's *statutory* power to proceed administratively, plaintiffs' interest in immediate judicial review outweighs the slight governmental interest in requiring exhaustion.[2]

Plaintiffs will expend time and money in the administrative appeal process unnecessarily if the Commission in fact lacks jurisdiction to conduct a proceeding to assess a civil penalty and immediate judicial review is denied. In contrast, the Government gains little if exhaustion is required. Exhaustion of administrative remedies almost certainly would not result in the Commission's correcting any error it has made in proceeding. It is unlikely that the Commission will decide that it lacks jurisdiction to proceed under regulations which took five years to promulgate. Moreover, the administrative law judge has indicated that he will not consider the issue of the Commission's jurisdiction to proceed until after all other issues are decided, thus rendering useless any challenge to the statutory validity of the proceedings themselves. In light of the futility of pursuing administrative remedies on the issue before the court, plaintiffs cannot be said to be "flouting" the administrative process. *See id.*, at 715. There simply is no reason to require exhaustion of administrative remedies where the remedies are futile, since the governmental interests served in such a case are minimal. *Id.*, at 720. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1960); *Chambers v. Local Union No. 639*, 578 F.2d 375 (D.C.Cir.1978); *Goclowski v. Penn Central Transp. Co.*, 571 F.2d 747 (3d Cir. 1977).

However, exhaustion of administrative remedies should be required on plaintiffs' request for a declaration that they are not "manufacturers" of products within the meaning of the Consumer Product Safety Act. Substantial governmental interests are served by permitting the Commission to apply its special competence to the question of whether plaintiffs are "manufacturers." *See West v. Bergland, supra*, at 715. In light of the desire to discourage the flouting of administrative remedies, *id.*, and in view of the absence of irreparable harm resulting from a denial of judicial review, the court finds that the governmental interest in requiring exhaustion on this question outweigh plaintiffs' interest in immediate judicial review.[3]

Upon the foregoing,

IT IS ORDERED That defendant's motion to dismiss be and it hereby is granted in part and denied in part.

IT IS FURTHER ORDERED That:

1. Plaintiffs' claims for an injunction prohibiting defendant from assessing a civil penalty against plaintiffs and for a declaration that defendant lacks the power to assess such a penalty be and they hereby are dismissed as not "ripe" for judicial resolution.

2. Plaintiffs' claim for a declaration that plaintiffs are not "manufacturers" within the meaning of the Consumer Product Safety Act be and it hereby is dismissed because of plaintiffs' failure to exhaust their administrative remedies.

---

**2.** The court need not decide whether exhaustion never is required when an administrative action is alleged to be in excess of delegated power. *See Seven-Up Co. v. FTC*, 478 F.2d 755, 757 (8th Cir. 1973) (dictum); *Dow Chemical, USA v. Consumer Product Safety Comm'n*, 459 F.Supp. 378, 388 (W.D.La.1978).

The court notes that *FTC v. Standard Oil Co. of California*, —— U.S. ——, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) and *Red River Transp. & Dev. Co. v. FAA*, 630 F.2d 592 (8th Cir. 1980), on which the Commission relies, concern the question of "final agency action" under § 10(c) of the Administrative Procedure Act and hence are inapplicable to the motion presently before the court.

**3.** Similarly, exhaustion should be required on plaintiffs' allegations that the Commission is barred from assessing civil penalties by the applicable statute of limitations and by *res judicata*. These are issues on which exhaustion typically is required, and there is no indication here that pursuit of an administrative remedy based on these issues would be futile. The desire to discourage the flouting of administrative remedies and the lack of irreparable harm resulting from the court's refusal to consider the issue at this time lead the court to conclude that the governmental interest in requiring exhaustion on these issues outweighs plaintiffs' interest in immediate judicial review.

IT IS FINALLY ORDERED That the only claims remaining before the court in the above-entitled action are those for declaratory and injunctive relief based on the alleged lack of statutory authority of the Consumer Product Safety Commission to proceed administratively for the purpose of assessing a civil penalty.

On Motions for Summary Judgment

This matter comes before the court upon the motion of plaintiffs and the cross-motion of defendant for summary judgment. Memoranda were submitted on behalf of all parties, and oral argument was heard on February 26, 1981.

The issue presently before the court, one which has not previously been judicially determined, is whether the Consumer Product Safety Commission ("Commission") possesses the authority to proceed administratively against plaintiffs for the purpose of assessing a civil penalty. *See* this court's Memorandum Order of January 22, 1981, at 7. To resolve this issue, the court must determine whether the Consumer Product Safety Act grants the Commission the authority to proceed administratively for the purpose of assessing a civil penalty and, if so, whether such a grant of authority is constitutional.

## I. The Commission's Statutory Authority

In pertinent part, 15 U.S.C. § 2069 states:

(a)(1) Any person who knowingly violates section 2068 of this title shall be subject to a civil penalty not to exceed $2,000 for each such violation [and] . . . $500,000 for any related series of violations . . . .

(b) Any civil penalty under this section may be compromised by the commission.

In determining the amount of such penalty or whether it should be remitted or mitigated and in what amount, the appropriateness of such penalty to the size of the business of the person charged and the gravity of the violation shall be considered. The amount of such penalty when finally determined, or the amount agreed on compromise, may be deducted from any sums owing by the United States to the person charged.

(c) As used in the first sentence of subsection (a)(1) of this section, the term "knowingly" means (1) the having of actual knowledge, or (2) the presumed having of knowledge deemed to be possessed by a reasonable man who acts in the circumstances, including knowledge obtainable upon the exercise of due care to ascertain the truth of representations.

■ Congress has the power to grant administrative agencies the power to assess civil penalties.[1] *E. g., Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938). In this instance, Congress failed to state explicitly whether under § 2069 the Commission is entitled to assess civil penalties. However, the language and legislative history of the statute indicate that Congress intended to empower the Commission to assess such penalties.

■ 15 U.S.C. § 2069(b) by its terms grants the Commission the power to determine the amount of a civil penalty[2] and whether it should be remitted or mitigated, and to compromise any such penalty. The court concludes that the power to "assess" civil penalties, though not explicitly given, is implicitly granted by the statute.[3]

---

1. The court here employs the term "assess" to mean "impose," rather than "determine the amount of," as this is the sense in which the parties use the word.

2. Plaintiffs contend that the statute grants the Commission the power to determine only the amount of compromise. The court disagrees. Section 2069 states the factors which the Commission is to consider when "*determining the amount of such penalty*," and the final sentence of § 2069(b) uses "such penalty" and "the

amount agreed on compromise" in the disjunctive, thus establishing that the "penalty" to be determined by the Commission is not "the amount agreed on compromise."

3. The Commission does not contend that it has the power to compel payment of a civil penalty, and acknowledges that if no compromise acceptable to the party proceeded against is reached, it must go to court to collect the civil penalty. *See* 28 U.S.C. § 2461(a).

█ . Congress may grant an administrative agency the power to compromise, but not to assess, a civil penalty. In fact, the Congress that enacted 15 U.S.C. § 2069 also enacted 46 U.S.C. § 814, which granted the Federal Maritime Commission the power to compromise a civil penalty, but apparently permitted the recovery of a civil penalty only "in a *de novo* proceeding in a U.S. District court." S.Rep. No. 92–1014, P.L. 92–416, 1972 Cong. & Admin.News, 3121, 3123–24.

However, 15 U.S.C. § 2069(b), unlike 46 U.S.C. § 814, gives the Commission the power to determine the amount of a penalty, states the standards to be used, and contains no language indicating that a civil penalty is to be recovered in a civil action. The granting of the power to determine the amount of a civil penalty and absence of any indication that such a penalty is to be assessed by the courts implies that Congress expected that the Commission would assess civil penalties. In addition, the legislative history of 15 U.S.C. § 2069, unlike that of 46 U.S.C. § 814, indicates an intent to grant the power to assess civil penalties. 15 U.S.C. § 2069 is identical to section 20 of the legislation considered by the House Conference Committee, whose Report[4] states:

> Section 20 makes any person who knowingly commits a prohibited act under section 19 subject to a civil penalty of not more than $2,000 for each violation. The Commission may impose multiple penalties for any related series of violations not to exceed $500,000 .... The Commission is given authority to compromise penalties which are imposed under this section. [House Commerce Committee Report No. 92–1153, 92nd Cong., 2d Sess. 46 (1972)]

Moreover, the rejection by the Conference Committee of the original Senate version of 15 U.S.C. § 2069, which would have provided for imposition of a civil penalty in a civil action, further evidences the congressional intent to empower the Commission to assess civil penalties.

It clearly is necessary and appropriate for the Commission to conduct hearings to help it determine whether to assess civil penalties against a party and, if so, in what amount. Therefore, as the Commission may assess civil penalties, 15 U.S.C. § 2076[5] grants the Commission the authority to proceed administratively for the purpose of assessing such penalties.

## II. The Constitutionality of 15 U.S.C. § 2069

█ Plaintiffs contend that the Commission may not proceed administratively for the purpose of assessing a penalty under § 2069 because such a penalty is a criminal penalty which the Commission is prohibited by the Fifth and Sixth Amendments from imposing. The court disagrees.[6]

In *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, the United States Supreme Court stated that:

> Where Congress has indicated an intention to establish a civil penalty, [the Court has] inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.... In regard to this latter inquiry, the court has noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." [Quoting *Fleming v. Nestor*, 363 U.S. 603, 617 [–621, 80 S.Ct. 1367, 1376–1378, 4 L.Ed.2d 1435] (1960).]

---

4. When a statute is enacted without change from the version considered by a congressional committee, the Committee Report generally is a reliable indicator of legislative intent. *See* 2A Sands, *Sutherland Statutory Construction* § 48.06 (4th ed.).

5. 15 U.S.C. § 2076 states that the Commission may "conduct any hearing or other inquiry

necessary or appropriate to its functions anywhere in the United States."

6. Plaintiffs do not dispute that the protections afforded under § 2069—those of 5 U.S.C. §§ 551–559, 702 & 706—are constitutionally sufficient if the penalty is a civil penalty.

Congress explicitly labelled the penalties of 15 U.S.C. § 2069 "civil" and enacted "criminal penalties" in 15 U.S.C. § 2070. Moreover, the purpose of 15 U.S.C. § 2069 is not punitive; 15 U.S.C. § 2069 is intended to encourage compliance with 15 U.S.C. § 2068.[7] *See Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938) (50% penalty for tax fraud is civil). Finally, plaintiffs have presented no evidence—much less "the clearest proof"—that the statutory scheme at issue here is so punitive in effect as to negate the clear congressional intention to establish a civil penalty.[8]

Upon the foregoing,

IT IS ORDERED That the motion of plaintiffs for summary judgment be and it hereby is in all things denied.

IT IS FURTHER ORDERED That the motion of defendant for summary judgment be and it hereby is granted.

IT IS FINALLY ORDERED That the Clerk of Court enter judgment as follows:

The plaintiffs Advance Machine Company and Robert J. Pond shall have and recover nothing from defendant Consumer Product Safety Commission.

---

**7.** The list of considerations in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963), may be "helpful" in considering this question. *United States v. Ward, supra*, 448 U.S. at 248, 100 S.Ct. at 2641. Here, the only one of the seven *Mendozo-Martinez* factors which aids plaintiffs, the fourth (the civil penalty "will promote the traditional aims of punishment—retribution and deterrence"), is present with most civil penalties.

**8.** The court does not reach the issue of whether the Commission's assessment of the maximum civil penalties against these plaintiffs would be "punitive" and thus either unauthorized under § 2069 or unconstitutional. *See* this court's Memorandum Order of January 22, 1981, at 4, 7.