UNITED STATES of America, Plaintiff,

v.

ADVANCE MACHINE COMPANY, a corporation, formerly also doing business as Commercial Mechanisms, Inc., Defendant.

Civ. No. 3–82–152.

United States District Court,
D. Minnesota,
Third Division.

Aug. 6, 1982.

In support of its motion, defendant advances four grounds: (1) The action is barred by the five-year statute of limitations, 28 U.S.C. § 2462; (2) the action is further barred by res judicata and the rule against splitting a cause of action; (3) defendant has never been a manufacturer of baseball pitching machines, and, therefore, cannot be charged with a violation of the Consumer Product Safety Act ["CPSA"], 15 U.S.C. § 2051 *et seq.*; and (4) the Government failed to specify the amount of civil penalty to be sought, as required by the CPSA. Defendant also asserts that the action should be in the name of the Consumer Product Safety Commission rather than the United States of America.

The Government submits that dismissal of the complaint is inappropriate because defendant has not met its burden of demonstrating that the claims asserted cannot be established on any possible theory. The Government further asserts that defendant's alternative motion for summary judgment is premature since discovery relating to numerous factual issues has not yet commenced.

James M. Rosenbaum, U. S. Atty., Francis X. Hermann, Asst. U. S. Atty., Minneapolis, Minn., J. Patrick Glynn, Chief, Consumer Affairs Section, Rosalind Avnet Lazarus, Atty., Consumer Affairs Section, Antitrust Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff; Martin Howard Katz, Gen. Counsel, Alan H. Schoem, Asst. Gen. Counsel, Leonard H. Goldstein, Atty., Consumer Product Safety Commission, Washington, D. C., of counsel.

Edward J. Schwartzbauer and James B. Lynch, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

RENNER, District Judge.

Before the Court is defendant's motion to dismiss or, in the alternative, for summary judgment. The motion was submitted on briefs.

## I. FACTUAL BACKGROUND

### A. *The Parties*

The United States of America brings this action at the request of the Consumer Product Safety Commission. This independent regulatory commission, established pursuant to section 4 of the Consumer Product Safety Act, 15 U.S.C. § 2053, is charged with protecting the public from unreasonable risks of injury associated with consumer products.

Defendant Advance Machine Company ["Advance"] is a Minnesota corporation with headquarters in Spring Park, Minnesota. In 1971 Advance acquired all of the outstanding stock in Commercial Mechanisms, Inc. ["CMI"], a Missouri corporation. CMI manufactured and distributed pressure washers and automatic baseball pitching machines from the time of its incorporation, 1962, until it was dissolved in 1975.

## B. *Statement of the Case*

On February 22, 1977, Inspector Jerome Boog of the Consumer Product Safety Commission inspected defendant at its premises in Spring Park, Minnesota. During this inspection, Boog obtained information regarding a possible defect in the CMI pitching machine.

After receiving injury data from Advance, and verifying the presence of a defect through an engineering analysis of the pitching machine, the Commission, on June 29, 1977, inspected Dudley Sports Company, ["Dudley"], a division of Athlone Industries Inc. ["Athlone"], the primary distributor and private labeler of the pitching machines.

On July 28, 1977, the Commission filed an action in the United States District Court for the District of Columbia, pursuant to section 12 of the CPSA, 15 U.S.C. § 2061, against Advance, CMI, Dudley, Athlone, and five other defendants, seeking an injunction and a declaration that the automatic baseball pitching machines they manufactured and distributed in interstate commerce were imminently hazardous consumer products causing numerous severe injuries. The suit also sought repair of all existing machines. The Commission alleged that the pitching machine, even when disconnected from its power source, retained such a high degree of tension in its spring and cable that, at the slightest vibration, the pitching arm would unexpectedly swing forward and downward at great speed, striking any person within its range.

The proceedings in that action continued for almost a year before the parties agreed in May 1978 to a consent judgment which set forth a corrective action plan to be undertaken by the defendants. The Commission did not incorporate into the suit or the consent judgment any claim for civil penalties.

On May 24, 1979, the Commission notified Advance, Dudley, and Athlone of the investigation by its compliance staff into their failure to provide information as mandated by the reporting requirement of section 15(b) of the CPSA, 15 U.S.C. § 2064(b).

On May 15, 1980, the Commission notified Advance that it had voted to issue an administrative complaint seeking a civil penalty for the violation of the reporting requirement at the expiration of 30 days, unless a settlement was reached. Advance and Robert J. Pond filed suit on June 19, 1980, in the United States District Court for the District of Minnesota, seeking to stop the Commission from issuing the administrative complaint and asking for a declaration that the Commission does not have the authority to administratively assess a civil penalty.

Upon cross-motions for summary judgment, Judge Alsop ruled that the Commission possessed authority to assess civil penalties through administrative hearings. *Advance Machine Co. v. Consumer Product Safety Commission,* 510 F.Supp. 360, 364–66 (D.Minn.1981). Relying upon a statutory amendment passed after Judge Alsop's decision, the Eighth Circuit Court of Appeals reversed that ruling. *Advance Machine Co. v. Consumer Product Safety Commission,* 666 F.2d 1166, 1168 (8th Cir. 1981). The Government filed this action on February 19, 1982.

## II. DISCUSSION

For purposes of deciding a motion to dismiss, the Court construes the complaint in the light most favorable to plaintiff and its well pleaded allegations are taken as true. *Park View Heights Corp. v. City of Black Jack,* 467 F.2d 1208, 1212 n.3 (8th Cir. 1972). In appraising the sufficiency of the complaint, the Court follows the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the pleaded claim which would entitle plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Seven-Up Bottling Co. v. Seven-Up Co.,* 561 F.2d 1275, 1285–86 (8th Cir. 1977). The motion to dismiss for failure to state a claim is viewed with disfavor and is usually granted only when the plaintiff includes allegations that show that

there is some insurmountable bar to relief. *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784, 787 (8th Cir. 1979), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). Accordingly, affirmative defenses such as the running of the statute of limitations, *Guy v. Swift,* 612 F.2d 383, 385 (8th Cir. 1980), or res judicata, *Moch v. East Baton Rouge Parish School Board,* 548 F.2d 594, 596 n.3 (5th Cir. 1977), may form the basis of a rule 12(b)(6) motion.

█ If, on a rule 12(b)(6) motion, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment pursuant to Fed.R.Civ.P. 56. Summary judgment is appropriately granted only when after viewing the facts in the light most favorable to the party against whom judgment is sought, the Court concludes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Kelsey v. Ewing,* 652 F.2d 4, 5 (8th Cir. 1981).

A. *Statute of Limitations*

Defendant asserts that this action is barred by the running of the controlling statute of limitations. The statute of limitations applicable to civil fines or penalties provides:

> Except as otherwise provided by an Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued.

28 U.S.C. § 2462. The parties agree that the deciding issue is when did the statute begin to run.

Defendant argues that since the complaint alleges that the first violation of the Consumer Product Safety Act occurred on or before January 1974, the action accrued no later than that date. Since this lawsuit was not filed until February 19, 1982, the five year period has assertedly expired, and any attempt to seek a civil penalty is barred. Defendant's underlying premise is that since the Consumer Product Safety Act requires immediate reporting of information concerning defects which could create a substantial product hazard, once a manufacturer fails to inform the Commission the violation is complete and a civil action could be maintained successfully by the Government.

Defendant further argues that the alleged violation is not a "continuing" wrong and points to the language of 15 U.S.C. § 2069(a)(1). This section sets out the civil penalties for violation of 15 U.S.C. § 2068. Defendant correctly notes that while section 2069(a)(1) specifically provides that a violation of 15 U.S.C. § 2068(a)(3) shall be a continuing violation for each day of failure to provide certain information, there is no such specification for a violation of the statute in question, 15 U.S.C. § 2064(b). When viewed in conjunction with the legislative history of the Act, this omission is advanced as proof that the Act does not impose a continuing duty to report the required information. Rather, that if a manufacturer fails to report to the Commission within 24 hours, the violation is complete and the cause of action accrues.

█ After considering the language and intent of the Act, the Court must reject defendant's argument. The argument is not without merit and does find limited support in the statute. This Court, however, in construing section 2064(b) must enforce the law as it is written. *Kananen v. Matthews,* 555 F.2d 667, 670 (8th Cir.), *cert. denied,* 434 U.S. 939, 98 S.Ct. 429, 54 L.Ed.2d 298 (1977). If the wording of the statute is plain, simple, and straightforward, the words employed must be accorded their normal meaning. *Id.* Moreover, statutes protecting the public health and safety are to be construed liberally. *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967).

Section 2064(b) provides:

> Every manufacturer of a consumer product distributed in commerce, and every distributor and retailer of such product, who obtains information which rea-

sonably supports the conclusion that such product—

 (1) fails to comply with an applicable consumer product safety rule; or

 (2) contains a defect which could create a substantial product hazard described in subsection (a)(2).

shall immediately inform the Commission of such failure to comply or of such defect, <u>unless such manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect or failure to comply.</u>

15 U.S.C. § 2064(b) (emphasis added).

■ The clear import of the underscored language is that a manufacturer, possessing information that its product contains a defect which could create a substantial product hazard, has a continuing duty to inform the Commission unless the Commission has been adequately informed of such defect. Although the regulations define "immediately" as 24 hours, 16 C.F.R. 1115.14(c), this does not extinguish the continuing statutory duty, but merely provides guidance to manufacturers. To argue, as defendant does, that the duty to report expires after 24 hours runs contrary to the last clause of section 2064(b) and the purposes of the Act.

In enacting 15 U.S.C. § 2064(b), Congressional intended to increase the likelihood that a substantial product hazard will come to the attention of the Commission in a timely fashion so that it could act swiftly to protect the consuming public. *See generally* S.Rep.No.94–251, 94th Cong., 2d Sess. 2 (1975), *as reprinted in* [1976] U.S.Code Cong. & Ad.News 993, 994. Under defendant's interpretation, this goal would be frustrated since a manufacturer could violate the reporting requirement without fear of punishment if it could successfully hide the evidence of the product defect from the Commission for five years. A manufacturer's incentive would thus be to obfuscate rather than to inform.

Defendant's argument that the failure to designate in 15 U.S.C. § 2069(a)(1) violations of the reporting requirements of 15 U.S.C. § 2064(b) as continuing ones is not conclusive. Section 2069(a)(1) merely prescribes the method for calculating the penalty for violations of 15 U.S.C. § 2068, and should not be viewed as setting out the substantive elements of a violation of 15 U.S.C. § 2064(b).

■ Likewise, defendant's comparison of the Senate bill and the House bill does not provide sufficient reason to ignore the clear meaning of the enacted statute. The Senate version is described in the legislative history as follows:

 The Senate bill required every manufacturer, importer, distributor of or dealer in, a consumer product who discovers that such product has a defect which relates to the safety of use of such product or that such product fails to comply with an applicable consumer safety standard to immediately notify the new Agency of the defect or failure to comply if such product has left the place of manufacture.

Conf.R.No.92–1593, 92nd Cong. 2d Sess. (1972), *as reprinted in* [1972] U.S.Code Cong. & Ad.News 4571, 4642. The House version, which was adopted, is described as follows:

 The House amendment required every manufacturer of a consumer product distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that the product fails to comply with an applicable consumer product safety rule, or contains a product defect which could create a substantial hazard to the public, to immediately inform the Commission of such failure to comply or of such defect, unless such manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect or failure to comply.

*Id.* This more restrictive and specific provision clearly provides support for the Government's position that Congress intended the duty to report to arise when a manufacturer received information concerning the safety of one of its products, as

described in 15 U.S.C. § 2064(b), and that this duty continues to exist unless a report is made or the condition in the second clause of section 2064(b) is satisfied: the manufacturer has actual knowledge that the Commission is adequately informed. Thus, a cause of action for violation of section 2064(b) first accrues upon the manufacturer's failure to file a timely report after learning of a defect. As this is a continuing duty, however, the statute of limitations does not start running until a report is filed or the manufacturer acquires actual knowledge that the Commission is adequately informed.

In the alternative, defendant contends that even if the duty to report information of a defect is a continuing one, the Government had by April 1976 sufficient information for the statute of limitations to begin running. This contention is based on Exhibit C to the Affidavit of Paul G. Norris III, which is a copy of an internal Commission memorandum, dated April 19, 1976, from William Biggs to Eric Stone of the Office of Product Defect Identification. The memorandum concerns the Dudley Olympia Pitching Machine. Attached to the memorandum is a copy of an article that appeared in the Phoenix Gazette on April 16, 1976. This article refers to three accidents in Arizona involving the pitching machine and to a lawsuit wherein Advance had acknowledged more than a dozen serious accidents in the preceding years. Defendant asserts that this memorandum establishes that the Commission had sufficient information by April 19, 1976, of a substantial hazard and that it had not been reported. Accordingly, the statute of limitations began running in April 1976, more than five years before the filing of this action.

Defendant's argument is deficient in two respects. First, the statute explicitly sets forth the duty to report as continuing unless the manufacturer has actual knowledge that the Commission is adequately informed. Advance does not contend it ever had such knowledge before February 22, 1977. Hence, the limitations statute could not have begun running until February 22, 1977.

Additionally, the Court is unprepared to find as a matter of law that an internal Commission memorandum is sufficient to establish that the Commission knew that there had been a violation of 15 U.S.C. § 2064(b). The transmittal of one newspaper article certainly does not prove that the Commission possessed the required information.

The Court holds that the statute of limitations began running on February 22, 1977, and that this action was filed within the five-year statutory period.

This holding obviates the need to discuss at length the parties' assertion of the equities underlying their respective positions, except to note that those equities favor the Government. Defendant knew as early as May 23, 1979, that the Commission was investigating reporting violations. Further, defendant has not established that the passage of time has so seriously impaired its ability to defend this suit that dismissal is required.

### B. *Res Judicata*

Defendant asserts that this action is barred under the principles of res judicata by the action brought by the Commission in July 1977. The July 1977 action, filed in United States District Court for the District of Columbia, against this defendant and others sought to have the baseball pitching machines declared "imminently hazardous consumer products" under 15 U.S.C. § 2061(a), and to compel defendants to cease manufacture, sale, and distribution of the pitching machines, and to engage in extensive advertising and mailings so as to notify the purchasers of the machines. This suit was resolved by entry of the consent decree on May 8, 1979.

The principle of res judicata bars a subsequent suit between the same parties or their privies when a prior action has resulted in a judgment on the merits of the same cause of action. *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 726–27 (2d

Cir. 1981); *Roach v. Teamsters Local Union No. 688,* 595 F.2d 446, 448–49 (8th Cir. 1979) (quoting *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)). The application of the res judicata doctrine requires a showing that there has been a previous action between the same parties or their privies involving the same subject matter in which a final judgment on the merits has been rendered with respect to the same cause of action. *Bryson v. Guarantee Reserve Life Insurance Co.,* 520 F.2d 563, 566 (8th Cir. 1975). The issue here is whether the Government is suing on a cause of action adjudicated in the earlier action.

 In determining what constitutes a cause of action for res judicata purposes, the Eighth Circuit has favored a broad approach in recognition of the salutory purposes of res judicata of finality of judgments and the avoidance of piecemeal litigation. *Roach,* 595 F.2d at 449 (citing *Hanson v. Hunt Oil Co.,* 505 F.2d 1237 (8th Cir. 1974)). The test that has evolved is whether the wrong for which redress is sought is the same in both actions. *Id.* (quoting *Woodbury v. Porter,* 158 F.2d 194, 195 (8th Cir. 1946)); *Hanson,* 505 F.2d at 1240; *Robbins v. District Court,* 592 F.2d 1015, 1017 (8th Cir. 1979); *cf. Engelhardt v. Bell & Howell Co.,* 327 F.2d 30, 32 (8th Cir. 1964) (test is whether the primary right and duty, and delict or wrong are the same in each action).

 After carefully reviewing the two actions, the Court is convinced that they are not the same. In the first, the Government, proceeding under 15 U.S.C. § 2061(a), sought a finding that the pitching machines constituted an imminent hazard and an order requiring certain remedial relief. The critical issue was whether the pitching machines were an "imminently hazardous consumer product."

This action, in contrast, seeks the assessment of a civil penalty for the violation of 15 U.S.C. § 2064(b) by the defendant's failure to report to the Commission when it allegedly obtained information which reasonably supported the conclusion that its product contained a defect which could create a substantial product hazard. In deciding this matter, the Court will have to decide: Whether Advance received information which reasonably supported the conclusion that its baseball pitching machines contained a defect; when, if ever, it received such information; whether the defect was such that it could create a "substantial product hazard"; whether Advance was required to file a report with the Commission; whether a civil penalty should be assessed and, if so, in what amount.

None of these issues were before the district court in the prior action. There, the wrong for which redress was sought was the manufacture and distribution of an imminently hazardous product. Here, the alleged wrong is the defendant's failure to report a substantially hazardous product to the Commission.

 The fact that both actions are based upon the same legislative act and could have been litigated in the same action is not determinative. The central question is whether they are separate causes of action, not whether the actions could have been joined in a single case. Defendant's view of the doctrine of res judicata is that if two actions involve the same parties and some of the same facts, they must be joined or the adjudication of one bars the other, regardless of the identity of the issues to be decided. Such a position broadens the doctrine beyond its theoretical underpinnings and judicial support.

### C. Proper Party

As additional grounds for dismissal, Advance asserts that it is not subject to the reporting requirements of 15 U.S.C. § 2064(b) because it was never a manufacturer of the machines in question. The mere fact that it was the parent corporation of CMI, which was primarily responsible for the manufacture of the pitching machines, is assertedly insufficient to hold Advance responsible under the Consumer Products Safety Act. The Government argues that the facts, when fully developed,

will demonstrate that Advance possessed and exercised ultimate control over CMI, that CMI was a mere agency or instrumentality of Advance, and that, therefore, the corporate fiction as to CMI's independent existence must be disregarded.

The general presumption is that a subsidiary corporation is legally separate from its parent corporation. *Williams v. McAllister Brothers Inc.*, 534 F.2d 19, 21–22 (2d Cir. 1976). However, "a strict adherence to common law principles is not required in the determination of whether a parent should be held for the acts of its subsidiary, where strict adherence would enable the corporate device to be used to circumvent the policy of the statute." *United States v. Firestone Tire & Rubber Co.*, 518 F.Supp. 1021, 1039 (N.D.Ohio 1981) (quoting *P.F. Collier & Son Corp. v. FTC*, 427 F.2d 261, 267 (6th Cir. 1970)). The law will not recognize corporate formalities used to circumvent a statutory policy or to violate a law. *Id.* Thus, where a violation of law is perpetrated through a corporate entity, the courts will intercede to hold the shareholder or parent corporation liable. *See Van Wyk v. Bergland*, 570 F.2d 701, 705 (8th Cir. 1978) (quoting *Bruhn's Freezer Meats v. United States Department of Agriculture*, 438 F.2d 1332, 1343 (8th Cir. 1971) ("[T]he corporate entity may be disregarded when the failure to do so would enable the corporate device to be used to circumvent a statute.")); N. Lattin, *Lattin on Corporations* 82 (1971).

The question of whether a corporation is an instrumentality or an alter ego of another corporation presents primarily an issue of fact to be determined upon the peculiar facts of each case. *National Bond Finance Co. v. General Motors Corp.*, 341 F.2d 1022, 1923 (8th Cir. 1965); *see Talen's Landing, Inc. v. M/V Venture, II*, 656 F.2d 1157, 1160 (5th Cir. 1981).

Here, this Court must determine whether CMI was so dominated by Advance that it became a mere instrument, indistinct from Advance, in order to pierce the corporate veil of CMI and assess liability against Advance. Among the controlling factors are:

(a) The parent corporation owns all or most of the capital stock of the subsidiary.

(b) The parent and subsidiary corporations have common directors and officers.

(c) The parent corporation finances the subsidiary.

(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e) The subsidiary has grossly inadequate capital.

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h) In the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(k) The formal legal requirements of the subsidiary are not observed.

*C M Corp. v. Oberer Development Co.*, 631 F.2d 536, 539 (7th Cir. 1980) (quoting *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 161 (7th Cir. 1963)) (quoting *Taylor v. Standard Gas & Electric Co.*, 96 F.2d 693, 704–05 (10th Cir. 1938), *rev'd on other grounds*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939)).

The parties have marshaled facts to support their respective arguments of corporate control and dominion by Advance. The strongest evidence of the independence of CMI was its degree of autonomy in the day-to-day production and distribution of the pitching machines and its financial strength. The Government has alleged,

however, facts, which if true, present a persuasive case on its behalf as well: Members of the CMI Board of Directors also served as directors of Advance; certain employees of Advance performed work for CMI; and Advance employees were involved in the handling of the hazards associated with the baseball pitching machine. Given that the evidence must be viewed at this juncture in the light most favorable to the Government, *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), the Court concludes that a triable issue of fact exists which precludes summary judgment.

### D. *Failure to Specify the Amount of the Penalty Sought*

 Defendant next contends that the complaint should be dismissed because of the Government's failure to consider certain specific factors in determining the amount of penalty to be sought upon commencement of the action. This failure is allegedly shown by the Commission's failure to specify the amount of penalty it is seeking. Defendant relies upon 15 U.S.C. § 2069(b):

> In determining the amount of any penalty to be sought upon commencing an action seeking to assess a penalty for a violation of section 19(a) [15 U.S.C. § 2068(a)] of this title, the Commission shall consider the nature of the product defect, the severity of the risk of injury, the occurrence or absence of injury, the number of defective products distributed, and the appropriateness of such penalty in relation to the size of the business of the person charged.

The Government asserts that the Commission has made the necessary determinations, but that it need not specify at this time the result of those determinations or the amount of penalty to be sought.

The Court finds defendant's argument lacking persuasiveness, statutory authority, and logic. Whether the Commission has made the required determination presents a fact issue for the Court, which cannot now be decided. Moreover, the statute does not require as a jurisdictional prerequisite to the bringing of this action that this determination be made at this time. Finally, the amount of the penalty will ultimately be a matter for the Court. Thus, it is difficult to see how defendant is prejudiced by the Commission's consideration, or lack thereof.

### E. *Party-Plaintiff*

 While not advanced as a ground for dismissal, the defendant also argues that this action should be in the name of the Consumer Product Safety Commission rather than the United States of America. This contention is based on a misreading of 15 U.S.C. § 2076(b)(7)(A), which provides that the Commission may bring a legal action in the name of the Commission if the Attorney General does not notify the Commission, within 45 days of a request, that the Attorney General will represent the Commission in a desired civil action.[1] The section does not require that an action brought by the Attorney General on behalf of the Commission be brought in the name of the Commission.

Accordingly, based on the files, briefs, and foregoing, IT IS HEREBY ORDERED that defendant's motion to dismiss or, in the alternative, for summary judgment is denied.

---

1. Section 2076(b)(7)(A) provides that:

The commission shall also have the power—
(7) to—
 (A) initiate, prosecute, defend, or appeal (other than to the Supreme Court of the United States), through its own legal representative and in the name of the Commission, any civil action if the Commission makes a written request to the Attorney General for representation in such civil action and the Attorney General does not within the 45-day period beginning on the date such request was made notify the Commission in writing that the Attorney General will represent the Commission in such civil action, . . .
 . . . .
for the purpose of enforcing the laws subject to it jurisdiction;
15 U.S.C. § 2076(b)(7)(A).