UNITED STATES of America

v.

ATHLONE INDUSTRIES, INC., also doing business as Dudley Sports Company

v.

CONSUMER PRODUCT SAFETY COMMISSION, Nancy H. Steorts, individually and in her official capacity as Chairman, Consumer Product Safety Commission, R. David Pittle, Chairman, Consumer Product Safety Commission, Edith B. Sloan, Sam Zagoria and Stuart M. Statler, individually and in their official capacities as Commissioners Consumer Product Safety Commission.

Appeal of UNITED STATES.

No. 83–5822.

United States Court of Appeals,
Third Circuit.

Argued June 21, 1984.

Decided Oct. 23, 1984.

Rehearing and Rehearing In Banc
Denied Nov. 21, 1984.

W. Hunt Dumont, U.S. Atty., D. New Jersey, Newark, N.J., Richard K. Willard Acting Asst. Atty. Gen., J. Patrick Glynn, Margaret A. Cotter (Argued), Rosalind Avnet Lazarus, Attys., Civ. Div., Dept. of Justice, Washington, D.C., Michael V. Gilberti, Asst. U.S. Atty., District of New Jersey, Newark, N.J., for appellant.

Michael F. Healy (Argued), Newman & Holtzinger, James Skelly Wright, Jr., Morgan, Lewis & Bockius, Washington, D.C., David M. McCann, Carpenter, Bennett & Morrissey, Newark, N.J., for appellee.

Before ALDISERT, Chief Judge, HIGGINBOTHAM, Circuit Judge, and HUYETT, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In our semi-robot age, as a substitute for the batting practice pitcher, inanimate machines have been manufactured which con-

---

front the player in the batter's box. In this case, some of the machines were defective and more wild than an erratic pitcher. In fact some of the machines were mysterious and unpredictable; even when disconnected from their power source, these machines retained such a high degree of tension in the spring and cable that with the slightest vibration, the pitching arm would unexpectedly swing forward and downward at great speed, striking any unsuspecting person within its range, allegedly causing injuries that were as serious as fractured skulls and loss of eye sight.

Since robots cannot be sued, but they can cause devastating damage, the defendant Athlone Industries, was twice sued as the ultimate responsible distributor for various violations of the Consumer Product Safety Act, 15 U.S.C. §§ 2051–2083 (1982). The first inning of litigation was what one might call the "imminent hazard" suit. The second inning was the "civil penalty" suit. Now on appeal we are asked to determine whether the civil penalty action can be nullified because of what happened earlier in the imminent hazard suit.

Technically we are confronted with the issue of whether there is a "claim preclusive" effect of a district court judgment in a prior declaratory and injunctive imminent hazard suit brought by the United States Consumer Product Safety Commission pursuant to section 12 of the Consumer Product Safety Act, 15 U.S.C. § 2061(a). This subsequent civil penalty suit under sections 15 and 20 of the Act, 15 U.S.C. §§ 2064, 2069 was instituted on behalf of the Commission by the United States against the same party, Athlone Industries, that had been sued in the earlier imminent hazard suit.

■ We reverse the summary judgment in favor of the defendant, concluding that the district court erred in ruling that the civil penalty action was barred by res judicata. We therefore remand this matter for further proceedings—or in baseball parlance—for completion of the other innings.

## I.

The United States appeals a final order of the United States District Court for the District of New Jersey granting summary judgment in favor of defendant Athlone Industries, Inc. ("Athlone") in an action instituted on February 19, 1982 by the United States, on behalf of the United States Consumer Product Safety Commission ("the Commission"), seeking the assessment of a civil penalty against Athlone pursuant to sections 15 and 20 of the Consumer Product Safety Act, 15 U.S.C. §§ 2064, 2069.

This civil penalty action commenced with the filing of a complaint by the United States Department of Justice against Athlone, the primary distributor of automatic baseball pitching machines manufactured by Advance Machine Company, Inc. ("Advance Machine") of Spring Park, Minnesota. The government's complaint charged that Athlone and Dudley Sports Company ("Dudley"), a division of Athlone, failed to report to the Commission certain information regarding these machines, as required by the Act.

Athlone moved for summary judgment on the grounds that the civil penalty action was barred by res judicata, the applicable statute of limitations, and the Commission's failure to determine the amount of penalty to be sought prior to commencing the action. The district court heard argument on Athlone's motion on July 28, 1983 and ruled in an oral opinion that the Commission's case was barred by res judicata, without reaching Athlone's other claims. The district court concluded that the Commission had based its claim on the same underlying factual events and on the same wrong as had been involved in previous litigation between Athlone and the Commission in the United States District Court for the District of Columbia. By order of September 9, 1983, the district court dismissed this suit.

The undisputed facts are as follows.

A. *The Prior Litigation—The "Imminent Hazard" Suit*

Advance Machine and its wholly-owned subsidiary, Commercial Mechanisms, Inc.,

manufactured the automatic baseball pitching machines bought by Athlone and distributed by Dudley. The Consumer Product Safety Commission conducted an inspection of Advance Machine in February of 1977 during the course of which, the Commission obtained information regarding a possible defect in the automatic pitching machine. After receiving injury data from Advance Machine and verifying the presence of a defect through an engineering analysis of the pitching machine, Joint Appendix ("J.A.") at 49–54, the Commission, on June 29, 1977, inspected Dudley Sports Company. The Commission informed Athlone that it was investigating the baseball pitching machine and requested information concerning the defect.

On July 28, 1977, the Commission filed an action in the United States District Court for the District of Columbia; pursuant to section 12 of the Consumer Product Safety Act, 15 U.S.C. § 2061, against Athlone, Advance, Dudley and six other defendants, seeking an injunction and a declaration that the automatic baseball pitching machines they manufactured and distributed in interstate commerce were "imminently hazardous" consumer products causing numerous severe injuries. The suit also sought repair of all existing machines. The Commission alleged that the pitching machine, even when disconnected from its power source, retained such a high degree of tension in its spring and cable that at the slightest vibration, the pitching arm would unexpectedly swing forward and downward at great speed, striking any person within its range.

On May 8, 1978, the United States District Court for the District of Columbia approved a consent judgment which set forth a corrective plan to be undertaken by the defendants. During the consent decree negotiations, the Commission attempted to insert language which would have reserved its right to proceed against the defendants "to determine if there has been a failure to comply with reporting obligations under Section 15(b) of the Consumer Product[s] [sic] Safety Act." J.A. at 176. The defendants refused to agree to such a provision,

and the final consent judgment contained no such reservation.

### B. The Present Litigation—The "Civil Penalty" Suit

The civil penalty suit which is the subject of this appeal arises out of the Commission's unsuccessful attempts to also impose civil penalties administratively upon the manufacturer and distributor of the hazardous baseball pitching machine.

On May 24, 1979, the Commission notified Athlone, Dudley, and Advance of its investigation into their failure to provide information as mandated by the reporting requirement of section 15(b) of the Consumer Product Safety Act, 15 U.S.C. § 2064(b). Harold Miller, the President of Athlone, was notified by letter that the Commission staff believed that the companies involved, Athlone and Dudley, as well as their respective presidents, had sufficient information as of May, 1973 upon which to make a consumer product safety report as required by Section 15(b)(2) of the Consumer Product Safety Act, 15 U.S.C. § 2064(b)(2). J.A. at 29, 176–177. The May 24th letter stated that this could subject Athlone, Dudley and the president of each company to civil penalties up to $500,-000. J.A. at 90–91.

On May 15, 1980, the Commission also notified Advance Machine that it had voted to issue an administrative complaint seeking a civil penalty for the violation of the reporting requirement at the expiration of 30 days, unless a settlement was reached. In response, Advance Machine and others filed suit on June 19, 1980, in the United States District Court for the District of Minnesota, to enjoin the Commission from issuing the administrative complaint and asking for a declaration that the Commission lacked the authority to administratively assess a civil penalty. The district court upheld the Commission's authority to proceed administratively. *Advance Machine Company v. Consumer Product Safety Commission*, 510 F.Supp. 360, 364–365 (D.Minn.1981).

The Eighth Circuit Court of Appeals, however, reversed the Minnesota district court's ruling on December 14, 1981, holding that the Commission did *not* have administrative authority under the Act to assess civil penalties. *Advance Machine Company v. Consumer Product Safety Commission,* 666 F.2d 1166 (8th Cir.1981).

Meanwhile, the Commission had also issued an administrative complaint against Athlone, Dudley, and their presidents in their individual official capacities on August 5, 1980, charging that by January, 1974 the defendants had information that the pitching machine had caused numerous injuries and that it contained a defect which could create a substantial product hazard, that they failed to provide the Commission with this information as mandated by the Act and that they should therefore be assessed a civil penalty in the amount of $500,000. J.A. at 61–67.

Athlone and its individual officers instituted suit against the Commission on August 26, 1981, in the United States District Court for the District of Columbia seeking to enjoin the administrative proceedings on the grounds, *inter alia,* that the Commission lacked the authority to assess a civil penalty and that the administrative complaint was barred by res judicata and the statute of limitations.

On March 4, 1982, the District of Columbia court granted the United States' motion to dismiss the case, holding that the issues raised were not ripe for review. The district court then ordered the plaintiffs to exhaust their administrative remedies, *Athlone Industries, Inc. v. Consumer Products Safety Commission,* No. 81–2023 (D.D.C.), and a notice of appeal was filed on March 18, 1982.

On May 13, 1983, the District of Columbia Court of Appeals held that the Consumer Product Safety Commission lacked the authority to assess a civil penalty administratively. *Athlone Industries, Inc. v. Consumer Product Safety Commission,* 707 F.2d 1485 (D.C.Cir.1983). In light of that holding, the Commission dismissed the administrative action against the defendants.

In the interim, the uncertainty surrounding the Commission's authority to assess civil penalties administratively prompted the United States to institute the instant action in the United States District Court for the District of New Jersey against Athlone, also doing business as Dudley Sports Company, on February 19, 1982. The government sought a civil penalty under section 20 of the Consumer Product Safety Act, 15 U.S.C. § 2069, for Athlone's failure to comply with the reporting requirements of Section 15 of the Act, 15 U.S.C. § 2064(b). A similar complaint was filed in the United States District Court for the District of Minnesota against Advance Machine.

In the Minnesota civil penalty action, the district court denied defendant Advance Machine's motion to dismiss or, alternatively, motion for summary judgment, on August 6, 1982. *United States v. Advance Machine Co.,* 547 F.Supp. 1085 (D.Minn. 1982). The Minnesota district court held that the prior action seeking to have the baseball pitching machines declared hazardous products did not preclude the action for violation of the reporting requirements.

The Minnesota decision is in direct contrast to the decision reached by the district court in this parallel civil penalty action. The New Jersey district court granted defendant Athlone's motion for summary judgment on September 9, 1983, and dismissed the United States' civil penalty suit on the ground that it was barred by the res judicata effect of the earlier declaratory and injunctive imminent hazard suit brought in 1977 by the Commission against Advance Machine and Athlone, among others, in the District of Columbia.

This appeal followed.

## II.

■ Our review of a grant or denial of summary judgment requires that we view the facts in the light most favorable to the party against whom judgment is sought and draw all reasonable inferences in favor of the nonmoving party, the United States.

In order to affirm, we must conclude, as did the district court, that there are no genuine issues of material fact in dispute and that Athlone, the movant, is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.

 We hold that under these basic principles, Athlone's motion for summary judgment was improvidently granted because the prior judgment has no res judicata effect between the parties to the present action. 6 Pt. 2 J. Moore & J. Wicker, Moore's Federal Practice ¶ 56.17 (2d ed. 1982). In reaching this result, we consider first, the statutory scheme and second, the doctrine of res judicata and the identity of the causes of action.[1]

## A. *The Statutory Scheme*

Congress enacted the Consumer Product Safety Act, 15 U.S.C. §§ 2051–2083 (1982), in 1972 to "protect the public against unreasonable risks of injury associated with consumer products." 15 U.S.C. § 2051(b)(1).

Section 15(b) of the Act provides that a manufacturer, distributor or retailer who obtains information reasonably supporting the conclusion that one of its products contains a defect which creates a "substantial product hazard"[2] must immediately inform the Commission, unless it has actual knowledge that the Commission had been adequately informed of the problem. 15 U.S.C. § 2064(b). This notification requirement was statutorily imposed upon manufacturers, distributors and retailers because they are often the first to receive information about hazardous consumer products.

Section 19 of the Act makes it unlawful to fail to furnish information required by Section 15(b), 15 U.S.C. § 2068(a)(4), and Section 20 provides civil penalties for violations of Section 19. 15 U.S.C. § 2069.

By virtue of section 12 of the Act, the Commission in its own right may seek injunctive and declaratory relief against any person who is a manufacturer, distributor or retailer of an "imminently hazardous consumer product"[3] in order to protect the public from such risk. 15 U.S.C. § 2061.

1. Athlone Industries argues on this appeal that this court should affirm the district court's holding, raising two additional grounds for affirmance. First, Athlone asserts that the dismissal of the civil penalty suit should be affirmed on the ground that the action is barred by the applicable statute of limitations, 28 U.S.C. § 2462 (1982), which provides that civil penalty suits "shall not be entertained unless commenced within five years from the date when the claim first accrued...." The decisive question is when the statute begins to run. To determine when the claim first accrued, this court would have to consider whether section 15(b) of the Act, 15 U.S.C. § 2064(b), mandates a *continuing duty* to report until the manufacturer, retailer or distributor has actual knowledge that the Commission is adequately informed, or whether, as Athlone urges, it requires an *initial duty* to report only.

Even if we were to hold that Athlone's interpretation of section 15(b) is correct in that this provision does not impose a continuing obligation on manufacturers, retailers and distributors, we would nevertheless be unable to affirm the grant of summary judgment on this ground because there are genuine issues of material fact in dispute regarding when Athlone first had a duty to report and when Athlone had actual knowledge that the Commission knew of the defect. Because there are no factual findings

on the record as to this issue, we express no opinion. Summary judgment is precluded where there are genuine fact issues as to the defense of statute of limitations. *Hanna v. United States Veterans Admin. Hosp.*, 514 F.2d 1092 (3d Cir.1975).

Additionally, Athlone asserts that the Commission failed to fulfill its statutory duty of determining the amount of penalty before commencing the civil penalty suit. Athlone relies on 15 U.S.C. § 2069(b) which provides that the Commission must consider certain factors, such as the nature of the product defect, the severity of the risk of injury, the occurrence or absence of injury, the number of defective products distributed and the size of the business in determining the amount of any penalty to be sought. There may be a genuine dispute whether the Commission made the required determination which presents a fact issue for the court. We conclude that summary judgment on this ground is also inappropriate.

2. As defined in Section 15(a)(2) of the Act, 15 U.S.C. § 2064(a)(2), a "substantial product hazard" is a "product defect which ... creates a substantial risk of injury to the public."

3. Section 12(a) of the Act, 15 U.S.C. § 2061(a), defines an "imminently hazardous consumer product" as a "consumer product which

The similarities and differences between the causes of action created by section 15(b) and section 12 of the Act are at issue in the present appeal. We turn now to the question of whether the prior judgment in the imminent hazard suit under section 12 forecloses the section 20 civil penalty action presently before us.

### B. *The Principles of Res Judicata*

 The affirmative defense of res judicata[4], *see* Fed.R.Civ.P. 8(c), requires that the party asserting such a bar bear the burden of showing that it applies. *Davis v. United States Steel Supply*, 688 F.2d 166 (3d Cir.1982) (in banc), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). Application of the claim preclusive aspect of the res judicata doctrine requires a showing by Athlone that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action. *I.A.M. National Pension Fund v. Industrial Gear Manufacturing Co.*, 723 F.2d 944, 946–947 (D.C.Cir.1983) *citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

 The United States argues that the district court erred in applying claim preclusion in this matter because the Commission's imminent hazard action under 15

U.S.C. § 2061 and the civil penalty suit brought on the Commission's behalf by the United Sates under 15 U.S.C. § 2069 did not involve the "same cause of action."[5] We agree.

 This court has on more than one occasion grappled with the difficult question of identity of causes of action for purposes of claim preclusion, *see, e.g., Davis v. United States Steel Supply*, 688 F.2d at 171–72; *Donegal Steel Foundry Co. v. Accurate Products Co.*, 516 F.2d 583, 587–88 (3d Cir.1975), and it bears repeating that the term " '[c]ause of action' cannot be precisely defined, nor can a simple test be cited for use in determining what constitutes a cause of action for res judicata purposes." *Id.* at 588, n. 10. As we more recently noted in *Davis*, the term has been given varied treatment depending upon the facts in each case and the inquiry is often fraught with conceptual difficulties:

> More difficult is the question of identity of the causes of action. A single cause of action may comprise claims under a number of different statutory and common law grounds.... *Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims*, although a clear

---

presents imminent and unreasonable risk of death, serious illness, or severe personal injury."

**4.** The Supreme Court has recently noted in *Migra v. Warren City School Dist. Bd. of Educ.*, —— U.S. ——, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984), that the doctrine of res judicata "is often analyzed ... to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' " This opinion will utilize the term "claim preclusion" to refer to the preclusive effect of a judgment in foreclosing relitigation of the same causes of action. Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. *See* Restatement (Second) of Judgments, Ch. 3, Introductory Note (1982); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4402 (1981).

**5.** There is no dispute that the consent judgment entered in the imminent hazard suit satisfies the requirement that there be a final judgment on

the merits in a prior suit. A consent decree is generally treated as a final judgment on the merits and accorded res judicata effect, *see, e.g., Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 96–97 (3d Cir.), *cert. denied sub nom. Transtech Inc. v. Interdynamics, Inc.*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); *I.A.M. National Pension Fund v. Industrial Gear Manufacturing Co.*, 723 F.2d 944, 947 (D.C.Cir.1983), except when there has been an express reservation of rights. While the United States sought to reserve its right to proceed in a civil penalty suit, such a reservation was not incorporated in the final consent judgment. *See e.g., Martino v. McDonald's System, Inc.*, 598 F.2d 1079 (7th Cir.1979).

Nor is there any doubt that the civil penalty suit is a subsequent suit involving the same parties— the United States and the Commission are in privity, and Athlone was a defendant in both actions. The narrow question before this court is whether this second suit involves the same cause of action as the imminent hazard suit.

definition of that requisite similarity has proven elusive....

Whatever the conceptual difficulties inherent in any definition of a "cause of action," often the presence of a single cause of action is clear.

*Davis*, 688 F.2d at 171 (emphasis added) (citations omitted).

Although we declined to adopt *one* specific legal theory in *Davis*, we indicated a predisposition towards taking a broad view of what constitutes identity of causes of action—"an essential similarity of the underlying events giving rise to the various legal claims." We therefore do not adhere to any mechanical application of a single test but instead focus on the central purpose of the doctrine of res judicata. We are thus in keeping with "[t]he present trend ... in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence." 1B J. Moore & J. Wicker, Moore's Federal Practice ¶ 0.410[1], at 359 (2d ed. 1983).

In *Davis*, despite the fact that we espoused no precise definition of a cause of action and did not adopt one magic formula or test, we did state that often the presence of a *single* cause of action is clear. Relying on *Williamson v. Columbia Gas & Electric Corp.*, 186 F.2d 464 (3d Cir.1950), as one such clear example of a single cause of action, we found that

> the acts complained of and the demand for recovery are the same. The only thing that is different is the theory of recovery. The same witnesses and documents will be necessary in the trial in both cases. No material fact is alleged in [the second action] that was not alleged in [the first].... Everything plaintiff was entitled to ask for from defendant was included in [the first action].

*Davis*, 688 F.2d at 171 (quoting *Williamson*, 286 F.2d at 470).

As *Davis* illustrates, this court has previously articulated various factors to determine when suits involve the same cause of action. These factors are the components of "an essential similarity of the underlying events," and provide sufficient guidance for assessing when there is *not* a single cause of action.

We will therefore consider, in the instant case, (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions) *Gissen v. Tackman*, 401 F.Supp. 310, 312 (D.N.J.1975); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first) *O'Shea v. Chrysler Corporation*, 206 F.Supp. 601, 605 (D.N.J.1962); and (4) whether the *material* facts alleged are the same.

To begin with, we recognize that merely because the United States relied on different statutes in each action does not, in and of itself, render its claims different causes of action for res judicata purposes. *Davis*, 688 F.2d at 171; *Antonioli v. Lehigh Coal and Navigation Company*, 451 F.2d 1171, 1177 (3d Cir.1971), *cert. denied*, 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972). Nor is it dispositive that the United States asserts a different theory of recovery or seeks different relief in the two actions. *Clemens v. Central Railroad Company of New Jersey*, 399 F.2d 825, 828 (3d Cir.1968), *cert. denied*, 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969). Thus, the focal points of our analysis are whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same.

The district court reasoned that the civil penalty suit was the same cause of action as the imminent hazard action because:

> the government ... based its legal claim on the *same underlying factual events* and the *same wrong;* namely, defendants' distribution of hazardous baseball pitching machines....

Moreover, the *same evidence* which supports a finding of imminent hazard in the District of Columbia case ... [supports] a finding of knowledge of the product's defect in this case.

J.A. at 184 (emphasis added).

First, we believe that the acts complained of and the demand for recovery are not the same in each suit. There were material facts alleged in the second action which were not alleged in the first. The district court found it significant that the underlying facts set forth in the government's complaints in the two suits were "virtually identical." J.A. at 183. Nevertheless, we find that the district court erroneously defined the acts complained of as the defect in the pitching machines. The government has argued persuasively that Athlone's *knowledge* of the defect and its *failure to report* information regarding the defect to the Commission is the gravamen of the complaint. The imminent hazard action focused on the fact that the defective products were in commerce and on the defendants' failure or refusal to cease the manufacture, sale and distribution of hazardous machines.

Second, the district court also concluded that the *wrong* for which redress is sought is the same in both cases, *i.e.*, the distribution of hazardous baseball pitching machines. We disagree. In the imminent hazard case, the wrong for which the Commission sought redress was Athlone's *distribution* of baseball pitching machines which presented an imminent hazard to the public, while in this civil penalty suit, the wrong for which it seeks redress is not the distribution of the dangerous machines, but Athlone's *failure to report* certain information to the Commission—the breach of a statutory obligation to provide timely information.[6]

We find the reasoning of the Minnesota district court, which decided this precise issue in the companion case, to be persuasive:

In the first [suit], the Government, proceeding under 15 U.S.C. § 2061(a), sought a finding that the pitching machines constituted an imminent hazard and an order requiring certain remedial relief. The critical issue was *whether the pitching machines were an "imminently hazardous consumer product."* This action, in contrast, seeks the assessment of a civil penalty for the violation of 15 U.S.C. § 2064(b) by the defendant's *failure to report to the Commission when it allegedly obtained information which reasonably supported the conclusion that its product contained a defect which could create a substantial product hazard....*

... There, the *wrong* for which redress was sought was *the manufacture and distribution* of an imminently hazardous product. Here, the alleged wrong is the defendant's *failure to report* a substantially hazardous product to the Commission.

*United States v. Advance Machine,* 547 F.Supp. at 1092 (emphasis added).

Finally, the district court, in the instant case, further concluded that the *"same evidence* which supports a finding of imminent hazard in the District of Columbia case [supports] ... a finding of knowledge of the product's defect in this case." J.A. at 183–184 (emphasis added). Again, we disagree.

Athlone argues that the Commission had sufficient facts prior to the conclusion of its injunction suit to amend the complaint and seek civil penalties. Athlone maintains that there is nothing in the record showing activity after the entry of the decree in the imminent hazard suit and prior to the filing of the civil penalty suit. Moreover, Athlone alleges a similarity between the materials appended to the United States' administrative civil penalty complaint and those appended to the motion for summary judgment in the injunction suit.

We, however, agree with the Commission's position that the attaching of similar documents does not make *all* the facts that were relevant in the civil penalty case the

---

**6.** *See* Appendix A where the relevant portions of the different complaints are excerpted.

same as the facts that were relevant in the imminent hazard suit.

With an abundance of caution and easy access to the Xerox machine, lawyers have a tendency to blitzkrieg a judge with a plethora of documents—documents that have critical facts, documents that have tangential facts and most often, documents that are inundated with irrelevant facts. Hopefully, judges are wise enough to sift the wheat from the chaff and consider only those facts that are truly relevant to the issue in his or her immediate adjudication. Thus, the overlap of irrelevant facts and probably even tangential facts constitutes nothing more than surplusage. In the imminent hazard case there were facts included in some documents, which for the imminent hazard case, were pure chaff or surplusage. But later in the civil penalty case, the same data that was previously surplusage, became part of the *sine qua non* of the government's proof.

As the Commission points out, the imminent hazard case turned on technical information supporting an imminent hazard whereas the witnesses and documents needed to establish the United States' civil penalty case include evidence of Athlone's receipt of certain information at certain times, the nature of the information received, evidence as to when that information was sufficient to give rise to a duty to report and evidence relating to the degree of culpability to assist a court in making a determination of an appropriate penalty. None of these matters were relevant in the imminent hazard suit. By its very nature, the imminent hazard suit is an emergency mechanism, and the evidence gathered for that suit, while it may have included proof that the defect in the product created a substantial product hazard, would not have been enough to bring the civil penalty action.

Since an imminent hazard case is not per se a civil penalty case, the Commission should have additional time to reflect on and review the investigation done for the imminent hazard case to thereby determine at a later date whether a civil penalty suit should be filed. There is no reason, based on either policy or law, that requires the Commission to prematurely start or simultaneously file a civil penalty suit whenever it attempts to take a dangerous product out of the stream of commerce.

### III.

We conclude, therefore, that since the suits involved different statutes, different acts, different wrongs, and necessitated different evidence to support the different material facts alleged, the district court erred in dismissing this civil penalty action on res judicata grounds. We will reverse the district court judgment and remand this matter for further proceedings consistent with this opinion.

### APPENDIX A

Specifically, the complaint in the imminent hazard suit alleged that:

20. At times, even though the pitching machine is disconnected from its power source, the spring and cable retain a high degree of tension. At these times, a slight vibration can cause the machine's arm to suddenly and unexpectedly pitch swiftly forward and downward.

21. The pitching machine does not contain a safety guard or shield or any other effective safety device to keep a person away from the zone through which the pitching arm travels.

22. The sudden, unexpected, swift forward and downward motion of the pitching arm can result and has resulted in numerous severe personal injuries to consumers who can be and have been struck by the arm.

23. The risk of death or severe personal injury posed by the sudden and unexpected movement of the pitching arm could be eliminated through the installation of safety devices.

24. All of defendants' unguarded or unshielded pitching machines present a continuing, imminent risk of death or severe personal injury to consumers.

25. The risk of death or severe personal injury created by the pitching machines is unreasonable.

26. The pitching machines manufactured, sold, or distributed by defendants are, therefore, "imminently hazardous consumer products" within the meaning of section 12(a) of the CPSA, 15 U.S.C. 2061(a).

26. *Defendants have failed or refused, and continue to fail or refuse to:*

(a) *cease the manufacture, sale, and distribution of said pitching machines;*

(b) give adequate public notice of the hazard contained in or associated with the pitching machines;

(c) mail notice of the hazard to each person who is a distributor, or retailer of the pitching machines;

(d) mail notice of the hazard to every person to whom defendants know the pitching machines were delivered or sold or who are presently in possession of said machines; and

(e) repair the defects contained in or associated with the pitching machines which present the hazard; or

(f) replace the pitching machines with a like or equivalent product which does not contain the defects which present the hazard; or

(g) refund the purchase price of the pitching machines.

J.A. at 44–45 (emphasis added).

The relief sought was as follows:

*PRAYER FOR RELIEF*

Wherefore, the premises considered, plaintiff prays that this court:

1. Declare, that the pitching machines described in this complaint are "imminently hazardous consumer products" within the meaning of section 12(a) of the CPSA, 15 U.S.C. 2061(a).

2. Order defendants to:

(a) cease the manufacture, sale, and distribution of the hazardous pitching machines;

(b) give public notice including but not limited to an adequate description of the pitching machines, a description of the hazard contained in or associated with the pitching machines and an explanation to consumers of their right to the remedy decreed by this court by:

(1) purchasing advertising space in newspapers so as to reach 85 percent of the newspaper reading public, no less than two columns by 100 lines, in the sports or front section, for three consecutive days, alternating morning and evening newspapers, beginning with the morning newspapers, other than on Friday or Saturday, with all copy and layout to be approved by plaintiff;

(2) purchasing advertising space in five major sports magazines of national circulation, no less than one half page in size, for one issue, with all copy and layout to be approved by plaintiff; and

(3) sending posters to all known distributors and retailers of the pitching machines, no less than two feet wide and three feet high, with all copy to be approved by plaintiff, accompanied by a letter urging the prominent display of such poster;

(c) mail notice including, but not limited to, the specific provisions listed in 2(b) above, to each person who is or has been a distributor or retailer of the pitching machines;

(d) mail notice including, but not limited to, the specific provisions listed in 2(b) above, to each person and organization to whom defendants know the pitching machines were delivered or sold; and

(e) repair all of the pitching machines manufactured, sold or distributed in a manner approved by plaintiff which eliminates the impact hazard presented by the cocked pitching arm, replace each pitching machine with one of like or equivalent value which does not contain the impact hazard presented by the cocked pitching arm, or refund the purchase price of the pitching machine;

3. Award to plaintiff its reasonable costs covering the investigation upon which this action was based; and

4. Grant such other and further relief as this Court may find necessary to protect the public health and safety and to implement the Consumer Product Safety Act.

J.A. at 46–47.

By contrast, the complaint in the civil penalty suit averred:

*VIOLATION*

18. By January 1974 and thereafter, *respondents knew that numerous severe personal injuries had been caused by the sudden and unexpected activation of the metal arm of a pitching machine* which was disconnected from its power source, and that, based on such injuries, numerous claims and product liability lawsuits had been lodged against them and/or their insurance carriers.

19. Therefore, *the respondents had obtained information by January 1974* and thereafter which reasonably supported the conclusion that the pitching machines contained a defect which could create a substantial product hazard.

20. The respondents knew of the existence and the authority of the Consumer Product Safety Act prior to January 1974.

21. The respondents, at the time they obtained information which reasonably supported the conclusion that the pitching machines contained a defect which could create a substantial product hazard, were subject to the requirements for notification of defect pursuant to 15 U.S.C. 2064(b) and the Commission's regulations for substantial product hazard notifications then in effect, 16 C.F.R. 1115.

22. *The respondents failed to inform the Commission by January 1974 or at any time thereafter until July 1977 that they had obtained information which reasonably supported the conclusion that the pitching machines contained a defect* which could create a substantial product hazard, as required by section 15(b)(2) of the CPSA, 15 U.S.C. 2064(b)(2).

23. By failing to inform the Commission immediately after they had obtained information which reasonably supported the conclusion that the pitching machines contained a defect which could create a substantial product hazard, respondents knowingly committed a prohibited act under section 19(a)(4) of the CPSA, 15 U.S.C. 2068(a)(4).

J.A. at 64–66 (emphasis added).

The relief sought was as follows:

RELIEF SOUGHT

Wherefore, the staff of the Consumer Product Safety Commission believes that the following relief is in the public interest and requests that the Commission, after affording interested persons an opportunity for a hearing:

1. Determine that respondents had obtained information by January 1974 and thereafter which reasonably supported the conclusion that the pitching machines described in paragraphs seven through twelve of this Complaint contained a defect, which could create a substantial product hazard and which was subject to the reporting requirements of section 15(b)(2) of the CPSA, 15 U.S.C. 2064(b)(2).

2. Determine that respondents knowingly violated section 19(a)(4) of the CPSA, 15 U.S.C. 2068(a)(4), by failing to immediately report the existence of the defect described in paragraphs thirteen through seventeen of this Complaint, as required by section 15(b)(2) of the CPSA, 15 U.S.C. 2064(b)(2).

3. Pursuant to section 20(a) of the CPSA, 15 U.S.C. 2069(a), assess a civil penalty in the amount of five hundred thousand dollars ($500,000) jointly and severally against respondents Athlone Industries, Inc., a corporation also doing business as Dudley Sports Company, and Harold J. Miller and Charles H. Gilbert, individually and as officers of Athlone Industries, Inc. for knowingly violating

section 19(a)(4) of the CPSA, 15 U.S.C. 2068(a)(4), by failing to furnish information as required by section 15(b)(2) of the CPSA, 15 U.S.C. 2064(b)(2), as alleged in this complaint.

4. Grant such other and further relief as the Commission deems necessary to protect the public health and safety and to implement the CPSA.

J.A. at 66–67.