**UNITED STATES of America, Plaintiff,**

v.

**GREAT AMERICAN VEAL, INC. and Thomas Burke, Defendants.**

**No. CIV. 96–4110(HAA).**

United States District Court,
D. New Jersey.

March 16, 1998.

Neil Rodgers Gallagher, United States Attorney's Office, Newark, NJ, for Plaintiff.

David Carmen Pennella, Pennella & Claps, Dover, NJ, for Defendants.

## OPINION

ACKERMAN, District Judge.

The United States brought this action against defendants Great American Veal, Inc. ("GAV"), and Thomas Burke to recover civil penalties previously assessed against the defendants by the United States Department of Agriculture ("USDA") pursuant to the Packers and Stockyards Act, 1921, as amended and supplemented, 7 U.S.C. § 181 *et seq.* (the "Packers Act").[1] Presently before the court are the following: (1) defendants' motion for summary judgment to dismiss the complaint; and (2) plaintiff's cross-motion for summary judgment. For the reasons set forth below, defendants' motion for summary judgment is DENIED, and plaintiff's motion is GRANTED.

## I. BACKGROUND & PROCEDURAL HISTORY

The pertinent facts in this case are not in dispute. GAV was engaged in the business of buying livestock for slaughter and manufacturing or preparing meats for sale. *Dec-*

---

1. Specifically, this action is brought pursuant to § 193(b) of the Packers Act which provides that if "the person against whom the civil penalty is assessed fails to pay such penalty, the Secretary may refer the matter to the Attorney General who may recover such penalty by an action in the appropriate district court of the United States."

*laration of Neil R. Gallagher ("Gallagher Decl."),* Exh. A at 5. GAV was subject to regulation by the USDA pursuant to the Packers Act. Burke was the president as well as the owner of all of the outstanding stock of GAV. *Id.,* Exh. A at 6.

By Decision and Order dated January 19, 1989 (the "January 19, 1989 Order"), and pursuant to 7 U.S.C. § 193, the Judicial Officer of the USDA, acting as and for the Secretary of Agriculture (the "Secretary") under authority delegated to him to perform regulatory functions,[2] ordered the defendants, *inter alia,* (1) to cease and desist from certain practices which were deemed unlawful under the Packers Act, and (2) to pay a civil penalty, jointly and severally, in the amount of $129,000.00. *See Gallagher Decl.,* Exh. A at 58. The January 19, 1989 Order required the defendants to pay the penalty "not later than the 90th day after the effective date of this Order ...." *Id.,* Exh. A at 58-59.

The defendants appealed the January 19, 1989 Order to the United States Court of Appeals for the Third Circuit. *See* 7 U.S.C. § 194(h) (investing exclusive jurisdiction in Court of Appeals "to review, and to affirm, set aside, or modify such orders of the Secretary"). On February 22, 1989, the Judicial Officer entered an order staying the civil penalty provisions of the January 19, 1989 Order pending the defendants' appeal to the Third Circuit. *Gallagher Decl.,* Exh. C. The Third Circuit Court of Appeals entered a Judgment Order on November 27, 1989 denying defendants' petition for review and affirming the January 19, 1989 Order. *Gallagher Decl.,* Exh. D.

Based on the Third Circuit's Judgment Order, and upon application by the Secretary, the Judicial Officer lifted the previously entered stay by order dated May 22, 1991. The substance of the May 22, 1991 Order, in its entirety, read as follows:

> The stay order previously issued in this proceeding is hereby lifted. The order filed January 19, 1989, provided that the civil penalty shall be paid "not later than

the 90th day after the effective date of this order ...." The "effective date of this order," insofar as payment of the penalty is concerned, shall be the date of service on respondents of the present order removing the stay order.

*Id,* Exh. E. The May 22, 1991 Order was served on Burke and GAV on June 4, 1991 and June 5, 1991, respectively. *See Affidavit of Joyce A. Dawson* at 2.

The defendants failed to pay the civil penalty. The instant action by the United States to enforce the imposition of the civil penalties was commenced on August 27, 1996.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Todaro v. Bowman,* 872 F.2d 43, 46 (3d Cir.1989); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.), *cert. dism'd,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Put differently, "summary judgment may be granted if the movant shows that there exists no genuine issues of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller ·v. Indiana Hosp.,* 843 F.2d 139, 143 (3d Cir.), *cert. denied,* 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it influences the outcome under the governing law. *Id.* at 248.

The party seeking summary judgment always bears the initial burden of production, *i.e.,* of making a *prima facie* showing that it is entitled to summary judgment. *Celotex*

---

2. The position of Judicial Officer was established pursuant to the Act of April 4, 1940 (7 U.S.C. §§ 450c to 450g), and Reorganization Plan No. 2 of 1953, 18 Fed.Reg. 3219 (1953), *reprinted in* 7 U.S.C. at 193 (1996).

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This may be done either by demonstrating that there is no genuine issue of fact and that as a matter of law the moving party must prevail, or by demonstrating that the nonmoving party has not shown facts relating to an essential element of the issue for which it bears the burden. *Id.* at 322–23. Once either showing is made, the burden shifts to the nonmoving party who must demonstrate facts supporting each element for which it bears the burden, as well as establish the existence of genuine issues of material fact. *Id.* at 324.

The sole issue raised in the respective motions for summary judgment is whether the plaintiff's complaint for recovery of the civil penalty is time-barred under the applicable statute of limitations. There is no dispute as to the underlying civil penalty imposed upon the defendants. *See Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Dfs.Opp.Brf."),* at 2 ("At this juncture, there is no continuing dispute that the underlying penalty imposed by the Department of Agriculture is beyond challenge and could have been enforced if timely suit was brought.").

### B. *The Packers Act and 28 U.S.C. § 2462*

The Packers Act was enacted to regulate meat packers by prohibiting unfair, discriminatory or deceptive trade practices. *See Stafford v. Wallace,* 258 U.S. 495, 513, 42 S.Ct. 397, 66 L.Ed. 735 (1922). The legislation embodies a comprehensive effort on the part of Congress to "remedy a number of undesirable practices which had arisen in connection with the buying and selling of livestock at the major stockyards." *United States v. Woerth,* 130 F.Supp. 930, 936 (N.D.Iowa 1955), *aff'd,* 231 F.2d 822 (8th Cir.1956).

In order to effectuate the overall purpose of the legislation, the statute provides the Secretary with the authority to cause complaints to be served upon any alleged violators and hold hearings thereon. 7 U.S.C. § 193(a). In addition to other remedies specified in the statute, § 193(b) permits the Secretary to "assess a civil penalty of not more than $10,000 for each ... violation" of the act. Section 193(b) goes on to state the following with respect to the Secretary's power to enforce any civil penalty assessments:

> If, after the lapse of the period allowed for appeal or after the affirmance of such penalty, the person against whom the civil penalty is assessed fails to pay such penalty, the Secretary may refer the matter to the Attorney General who may recover such penalty by an action in the appropriate district court of the United States.

Sections 193(a) and (b), read together, contemplate that a civil penalty must first be assessed by the administrative agency before suit may be filed in a district court.

The Packers Act does not, however, prescribe a time limit within which an action to enforce an administratively imposed penalty must be brought. Accordingly, as both parties acknowledge, reference must be made to 28 U.S.C. § 2462 for the applicable statute of limitations. That section provides as follows:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

§ 2462. There is no dispute that the instant action concerns "an action, suit or proceeding for the enforcement of [a] civil fine, penalty, or forfeiture," within the intendment of the statute. The issue raised by the respective motions concerns when plaintiff's "claim first accrued."

The defendants' motion presents three alternative dates on which the plaintiff's claim first accrued, all of which would render the instant action time-barred. First, defendants argue that the government's present claim accrued on the date of the underlying violation. Second, defendants argue that the date on which the § 2462 time limitation began to run was November 27, 1989, when the defendants' petition for review was de-

nied by the Third Circuit. Third, assuming that the court does not accept either of the preceding dates, defendants argue that pursuant to the terms of the May 22, 1991 Order, the government's present claim began to accrue on the date each defendant was served with the order, *i.e.*, the "effective date" of the May 22, 1991 Order. As noted above, defendants were served with a copy of the order on June 4, and June 5, 1991, respectively. Defendants contend, accordingly, that the government's action to enforce a civil penalty, instituted on August 27, 1996, is time-barred pursuant to the five-year statute of limitations imposed under § 2462.

By contrast, the government argues that pursuant to the terms of the May 22, 1991 Order, its cause of action did not begin to accrue until ninety-days after the defendants were served with a copy of the order, September 2, 1991 with respect to Burke, and September 3, 1991 with respect to GAV. Thus, the United States necessarily argues that the May 22, 1991 Order incorporated that portion of the January 19, 1989 Order which allowed the defendants to pay the civil penalty within ninety-days of the date of the order.

These contentions will be discussed in turn.

### (1) *Date of Predicate Violation or Date of Assessment of Civil Penalty*

Defendants first argue that the statute of limitations began to run from the date of the predicate violation of the Packers Act. The issue of when the § 2462 five-year limitation begins to run for purposes of enforcing civil penalties has been the subject of various federal cases, albeit in the context of statutes other than the Packers Act. Moreover, these cases have not been altogether consistent in their application of § 2462.

In *Crown Coat Front Co. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967), a private litigant sued the United States for an adjustment to a government contract. Pursuant to the terms of the government contract, a private party's right to sue in court was made expressly contingent upon exhaustion of administrative remedies. *Id.* at 511–12. The limitations provision at issue, 28 U.S.C. § 2401(a), similar to 28 U.S.C. § 2462, read as follows:

> Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.

The plaintiff brought an action in federal court more than six years after it completed performance of the contract, but less than six years from the date of the final administrative decision. *Id.* at 508. Based upon the fact that the plaintiff was prohibited from suing the government in court prior to the exhaustion of administrative remedies, the Supreme Court held that the plaintiff's claim was timely under § 2401(a):

> In our opinion, if its claim arose under the contract, it first accrued at the time of the final decision of the [administrative agency], that is upon the completion of the administrative proceedings contemplated and required by the provisions of the contract .... [T]he "right of action" of which § 2401(a) speaks is not the right to administrative action but the right to file a civil action in the courts against the United States.

*Id.* at 511. The Court concluded that the " 'right to demand payment has ... been the hallmark of accrual of a claim in this court.' " *Id.* at 514 (quoting *Nager Elec. Co. v. United States,* 177 Ct.Cl. 234, 368 F.2d 847, 859 (1966)).

Relying on *Crown Coat Front,* the First Circuit Court of Appeals, in *United States v. Meyer,* 808 F.2d 912, 914 (1st Cir.1987), held that a claim first accrues under § 2462 to enforce a civil penalty imposed under the Export Administration Act ("EAA"), 50 U.S.C.App. § 2401 *et seq.,* from the date of the assessment of the administrative penalty, rather than from the date of the predicate violation. The court reasoned that a cause of action does not "accrue," in the ordinary sense of that word, until a suit may be maintained thereon, and thus, "a claim for 'enforcement' of an administrative penalty cannot possibly 'accrue' until there is a penalty to be enforced." *Meyer,* 808 F.2d at 914.

Tracking the rationale of the Supreme Court in *Crown Coat Front,* the *Meyer* court

placed great significance in the fact that the EAA prohibited the government from commencing suit in the district court until a penalty had been assessed and reduced to an administrative judgment. *Id.* Section 2410(f) of the EAA provides—with language similar to that used in § 193(b), the statute at issue in this litigation—that "in the event of the failure of any person to pay a penalty imposed pursuant to [the antiboycott provisions of the EAA], a civil action for the recovery thereof may ... be brought in the name of the United States." This language mirrors § 193(b), the statute at issue in this litigation. The First Circuit concluded that

> [t]his language alone strongly suggests—indeed, requires—that the Department [of Commerce] refrain from initiating a civil suit until the appropriate administrative authority has imposed a sanction which the respondent has thereafter refused to satisfy.

*Meyer,* 808 F.2d at 914.

Similarly, in *United States Department of Labor v. Old Ben Coal Co.,* 676 F.2d 259 (7th Cir.1982), the Seventh Circuit held that, in the context of the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 801 *et seq.,* the limitations provision of § 2462 did not begin to run until an administrative proceeding had concluded. Pursuant to 30 U.S.C. § 819(a)(4), the Secretary of Labor could petition the district court to enforce a civil penalty "[i]f the person against whom a civil penalty is assessed fails to pay the penalty within the time prescribed in such order ...." Accordingly, the Seventh Circuit, also relying on *Crown Coat,* reasoned as follows:

> The Coal Act states specifically that the Secretary shall file a petition for enforcement of the order assessing the civil penalty only if the person against whom the penalty was assessed fails to pay it within the time prescribed in the order, 30 U.S.C. § 819(a)(4). Obviously, an administrative agency order must exist before the Secretary can file a district court action to enforce it. Therefore, if 28 U.S.C. § 2462 applies to the district court proceeding the

limitations period begins to run when the administrative order becomes final.

*Old Ben Coal,* 676 F.2d at 261.

Defendants in this action rely primarily on *Unexcelled Chemical Corp. v. United States,* 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953), and *United States v. Core Laboratories, Inc.,* 759 F.2d 480 (5th Cir.1985), to support their initial contention that the § 2462 five-year time limitations period began to run from the date of the underlying Packers Act violation. In *Core Laboratories,* as in *Meyer,* the United States instituted suit to recover civil penalties imposed under the EAA. 759 F.2d at 481. Unlike *Meyer,* however, the Fifth Circuit Court of Appeals held that the enforcement suit was time-barred since § 2462, as applied to the EAA, began to run from the date of the underlying violation, rather than from the date of the administrative assessment of the penalty. *Id.* at 483. The court noted, in rather broad fashion, that a review of the cases involving § 2462 and its predecessors "clearly demonstrates that the date of the underlying violation has been accepted without question as the date when the claim first accrued, and, therefore, as the date on which the statute began to run." *Id.* at 482.

It is questionable, however, whether the cases cited and relied upon by the Fifth Circuit were as clearly supportive of its holding as the court believed. For instance, the Fifth Circuit's reliance on *United States v. Athlone Industries, Inc.,* 746 F.2d 977 (3d Cir.1984), a case decided by this circuit, may have been misplaced. *Athlone Industries* principally concerned the *res judicata* effect of prior litigation brought by the Consumer Product Safety Commission (the "Commission") against a manufacturer pursuant to the Consumer Product Safety Act ("CPSA") on a subsequently initiated matter seeking the imposition of civil penalties under the CPSA. The *Athlone Industries* suit arose out of the Commission's past unsuccessful attempts to administratively impose civil penalties upon the manufacturer, distributor and individual corporate officers. 746 F.2d at 980–81. On two separate occasions, federal appellate courts held that the Commission lacked the authority to assess civil penalties

administratively under the CPSA. *Id.* (citing *Advance Mach. Co. v. Consumer Prod. Safety Comm'n,* 666 F.2d 1166 (8th Cir.1981); and *Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n,* 707 F.2d 1485 (D.C.Cir.1983)).

In light of these holdings, the Commission instituted suit in the District of New Jersey seeking civil penalties under 15 U.S.C. § 2069. The district court dismissed the Commission's action based on the *res judicata* effect of related suits decided previously. *Athlone Indus.,* 746 F.2d at 981. The issue of the § 2462 statute of limitations was apparently first raised on appeal by the respondent as an additional basis to affirm the district court's dismissal, and the Third Circuit's entire discourse on the issue was contained in a footnote. *See id.* at 982 n. 1. The court expressed no opinion on whether summary judgment would have been appropriate on the issue of the suit's timeliness under § 2462 since there were no findings by the district court as to whether the CPSA mandated a continuing duty to disclose to the Commission defects which would create a substantial product hazard, or when the manufacturer first had a duty to report such a defect. *Id.*

Significantly, in *Athlone Industries,* the administrative agency never had the opportunity to first assess civil penalties. Accordingly, the issue addressed in the footnote was not whether the § 2462 statutory time period began to run from the date of the predicate violation or the date of the civil penalty assessment. Rather, the issue was whether the action which sought to impose the civil penalties *in the first instance* was time-barred. Clearly, with respect to this issue, the date of the predicate violation can be the only basis on which to determine whether the § 2462 statute of limitations would apply to bar the action.

Moreover, *Athlone Industries* did not require, as in this case, administrative proceedings as a precondition to initiation of suit in court. Rather, § 2069(b) of the CPSA required the *executive* agency to determine the amount of penalty—relying on certain factors enumerated in the statute—prior to commencing a civil penalty suit. *Athlone Indus.,* 746 F.2d at 982 n. 1. As noted by the First

Circuit in *Meyer,* such "prosecutorial determinations," as opposed to "adjudicatory administrative proceedings,"

> however necessary they may be to the prosecution of enforcement actions, are not in any sense adjudicative. At bottom, they comprise nothing more or less than decisions to bring suit. In significant contrast to the adjudicative administrative proceedings required before EAA penalties may be imposed and enforced, these determinations fall entirely within the suzerainty of the government. Were the statute of limitations to run against, say, an F.T.C. action, the Commission would have only its own indecision to blame. The EAA analogue to this kind of administrative prerequisite is not the imposition of a statutory penalty by an ALJ after notice, discovery and hearing; rather it is the Department's initial issuance of a charging letter .... To liken prosecutorial decisionmaking to mandatory administrative adjudication is to compare plums with pomegranates.

808 F.2d at 920–21.

Accordingly, the factual circumstances of and the statutory scheme at issue in *Athlone Industries* are meaningfully different from those at issue in *Meyer* and *Core Laboratories,* as well as the case at bar. It is therefore apparent to this court that *Athlone Industries* is not quite so deserving of the significance placed upon it by the *Core Laboratories* court.

The *Core Laboratories* court also found persuasive support in the Supreme Court's decision in *Unexcelled Chemical Corp. v. United States,* 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953), a case on which defendants herein rely heavily. In *Unexcelled Chemical,* the Court interpreted a two-year statute of limitations applicable to civil actions brought under the Walsh–Healey Act, 41 U.S.C. § 35 *et seq.,* as running from the date of the underlying violation. 345 U.S. at 65–66. As made clear by the Court's subsequent decision in *Crown Coat Front,* however, the Fifth Circuit's reliance on *Unexcelled Chemical* may have been misplaced. The Court in *Crown Coat Front* clearly limited the precedential sweep of the *Unexcelled Chemical* holding:

Nor do[es] ... *Unexcelled* control this case. [I]n *Unexcelled,* where the statutory period was held to run from the date of the breach of statutory duty under the Walsh–Healey Act ... rather than from the date of the administrative determination of the liquidated damages due the Government, it seems apparent that the United States, to which damages were payable, could have brought suit without first resorting to administrative remedies.

386 U.S. at 519.

As in *Crown Coat Front, Meyer* and *Old Ben Coal,* and in contrast to *Unexcelled Chemical,* it appears that the Packers Act required the government to first obtain a civil penalty assessment through an administrative proceeding prior to instituting an enforcement proceeding in this court. Accordingly, this court finds that defendants' reliance on *Unexcelled Chemical,* while not unreasonable in light of *Core Laboratories,* is misplaced.

No court in this district or circuit has had occasion to squarely confront this issue.[3] The core principle underpinning the *Meyer* and *Old Ben Coal* decisions—that " '[i]f disputes are subject to mandatory administrative proceedings [before judicial action may be taken], then the claim does not accrue until their conclusion,' " *Meyer,* 808 F.2d at 916 (quoting *Lins v. United States,* 231 Ct.Cl. 579, 688 F.2d 784, 786 (1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983)); *Old Ben Coal,* 676 F.2d at 261—appears to this court to be sound, and moreover, preferable to the reasoning employed by the Fifth Circuit.[4] Stripped of its supporting case citations, *Core Laboratories* simply does not possess any persuasive authority to this case.

Furthermore, the application of the *Core Laboratories'* rationale to this case would lead to anomalous results. The conduct underlying the Packers Act violation occurred in 1980 and 1981. *See Gallagher Decl.,* Exh.

A at 3. If the holding of *Core Laboratories* were applied to this case, then the United States would have been required to bring the action to enforce a civil penalty either in 1985 or 1986, well before the January 19, 1989 Order assessing those civil penalties by the Judicial Officer, in whom final administrative authority was delegated. Thus, the statute of limitations would have lapsed in this enforcement action even before the government's right to sue arose. Moreover, application of *Core Laboratories* would create the danger, as clearly evident in this case, of the government successfully seeking civil penalties and yet, because the administrative proceedings took longer than five years, unable to enforce the penalties from a violator who simply refuses to pay. *See, e.g., Crown Coat Front,* 386 U.S. at 514 (noting that similar result under 28 U.S.C. § 2401(a) "is not an appealing result"). The First Circuit's concern is quite apt under these circumstances:

The concern that 28 U.S.C. § 2462 could pluck an enforcement suit from the vine before it had even ripened enough to be brought is by no means theoretical. According to the Fifth Circuit's construction of 28 U.S.C. § 2462, the Department would have a total of five years from the date of a statutory violation within which to uncover the infraction, conduct the necessary investigation, issue a charging letter, and wend its way through the (often lengthy) administrative process. A suspected violator would, in the straitened circumstances made possible by the *Core* court, have considerable incentive to employ the available procedures to work delay—not a particularly difficult task in view of the marked resemblance between the conduct of modern administrative litigation and King Minos's labyrinth in ancient Crete.

*Meyer,* 808 F.2d at 919.

 This court accordingly holds that, under the Packers Act, when an assessment of a civil penalty through an administrative proceeding is a prerequisite to the initiation

---

3. As noted previously, *Athlone Industries* is not on point, and thus, does not control this case.

4. At least two other district courts have arrived at the same conclusion. *See United States v. McIntyre,* 779 F.Supp. 119 (S.D.Iowa 1991)

(finding reasoning of *Meyer* persuasive); *United States v. McCune,* 763 F.Supp. 916, 918 (S.D.Ohio 1989) ("This Court finds the First Circuit's analysis to be more compelling than that of the Fifth.").

of an enforcement action in a federal district court, the five-year statute of limitations imposed under § 2462 begins to run, for purposes of bringing an enforcement action under the Packers Act, only when a final administrative decision has been issued, and not when the underlying violation of the statute has occurred. As applied to this case, § 193(b) mandates that an action to enforce a civil penalty in the district courts must await the imposition of a civil penalty in an administrative proceeding and the failure on the part of a violator to pay such penalty. Thus, the statute of limitations established under § 2462 does not begin to run, as argued by defendants, on the date of the predicate violations.

## (2) *Date of Third Circuit's Denial of Defendants' Petition for Review*

■ Defendants alternatively argue that the date on which the § 2462 time limitation began to run in this case was November 27, 1989, when the defendants' petition for review was denied by the Third Circuit. In essence, defendants argue that since the January 19, 1989 Order became final and non-appealable when the Third Circuit rejected their petition for review, the time began to run on November 27, 1989. This argument is unavailing.

On February 22, 1989, the Judicial Officer had entered an order staying the civil penalty provisions of the January 19, 1989 Order pending the defendants' appeal to the Third Circuit. *See Gallagher Decl.,* Exh. C. At the time of the Third Circuit's November 27, 1989 affirmance order, however, the stay order was still in effect. The stay was not lifted automatically upon the entry of the Third Circuit's affirmance order. The stay order itself did not provide for an automatic lifting of the stay upon the occurrence of a specified event, and defendants have not pointed to any source which provides for such an event. Rather, the evident practice before the Department of Agriculture is that an order by the Judicial Officer must be entered lifting the stay. *See, e.g., In re Jackie McConnell,* 54 Agric. Dec. 448 (1995); *In re William Dwaine Elliot,* 52 Agric. Dec. 1372 (1993). In the case at bar,

the Judicial Officer, upon application by the Secretary, entered such an order lifting the stay on May 22, 1991. Accordingly, the running of the statute of limitations did not begin on November 27, 1989 when the Third Circuit affirmed the January 19, 1989 Order and rejected the defendants' petition for review.

## (3) *Date of Entry of Removal of Stay Order*

■ Defendants' final alternative argument is that the statute of limitations began to run on the date that service of the May 22, 1991 removal of stay order was served on the defendants. This argument is also unavailing. The May 22, 1991 order provided as follows:

> The order filed January 19, 1989, provided that the civil penalty shall be paid "not later than the 90th day after the effective date of this order . . . ." The "effective date of this order," insofar as payment of the penalty is concerned, shall be the date of service on respondents of the present order removing the stay order.

Referring to this language, the defendants argue that the

> Government's inclusion of an additional ninety (90) day period is certainly beyond the four corners of the May 22, 1991 order. On its face, this order makes absolutely no reference to such a period . . . . Obviously, in formulating the May 22, 1991 order, the Judicial Officer was cognizant of when the order became "effective" and "payment due". The terms of the May 22, 1991 Order reference both circumstances. Consequently, had the Judicial Officer *truly* intended another ninety (90) days to then apply, he certainly could have said so, by simply stating that payment was due "ninety (90) days after the effective date". His failure to include this type of additional reference can only be interpreted to mean that no further extension for payment was intended.

*Dfs. Opp. Brf.,* at 3 (emphasis in original). This argument is entirely meritless, and indeed, based on even a cursory reading of the May 22, 1991 order, somewhat bewildering.

The ninety day period originally provided under the January 19, 1989 Order is, contrary to the defendants' assertions, specifically referenced in the May 22, 1991 order. Although the "effective date" was June 4 and 5, 1991, when Burke and GAV were respectively served with the May 22, 1991 order, the defendants were clearly given ninety days to pay the civil penalty, as evidenced by the order's incorporation of that portion of the January 19, 1989 Order which required the defendants to pay the civil penalty "not later than the 90th day after the effective date of this order ...." There is no ambiguity here.

Thus, the "effective date" of the May 22, 1991 order was significant only for purposes of counting the ninety day period provided to the defendants to pay the civil penalty. Consequently, the United States was precluded from instituting suit for enforcement of the civil penalty during that ninety day period. As the Supreme Court recognized, the " 'right to demand payment has ... been the hallmark of accrual of a claim in this court.' " *Crown Coat Front*, 386 U.S. at 514 (quoting *Nager Elec.*, 368 F.2d at 859).

This court finds that the five year statute of limitations did not begin to run until ninety days after the defendants were served with the order, or September 2 and 3, 1991. The complaint in this action was filed on August 27, 1996. Accordingly, the defendants' motion for summary judgment on grounds that the suit is time-barred is DENIED. As there are no other issues in this case, plaintiff's motion for summary judgment is hereby GRANTED.